Jeffrey T. CASTELLO, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Jeffrey T. Castello, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 15, 2013.
Decided Dec. 9, 2013.
Publication Ordered Feb. 6, 2014.

reasoning for denying Myers' request for bail,          as required by Pa.R.Crim.P. 521(C).

Thomas M. Castello, Pittsburgh, for petitioner.

Erin B. Lokhandwala, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

PELLEGRINI, President Judge.

Jeffrey T. Castello (Claimant) petitions for review of the orders of the Unemployment Compensation Board of Review (Board) affirming two decisions of a Referee, one of which found Claimant ineligible for Unemployment Compensation (UC) benefits under Section 401(c) of the Unem-

ployment Compensation Law (Law);[1] imposing a fault overpayment under Section 804(a) of the Law;[2] and assessing penalty weeks under Section 801(b) of the Law;[3] and the other denying Emergency Unemployment Compensation (EUC) benefits under Section 4001(b) of Title IV of the Supplemental Appropriations Act of 2008 (EUC Act);[4] and imposing a non-fraud overpayment under Sections 4005(b) and (c) of the EUC Act.[5] We affirm.

Claimant filed an application for Pennsylvania benefits effective May 2011. During the claim weeks ending September 24, 2011, through October 29, 2011, Claimant reported $0.00 in earnings for each of the weeks and he received UC benefits totaling $3,384.00 for all of the weeks. However, Claimant was also paid weekly wages from Day & Zimmerman NPS, Inc. (Employer) ranging between $1,277.98 and $2,417.80 during those weeks, totaling $10,940.55. In addition, for the claim weeks ending December 24, 2011, through March 24, 2012, Claimant received $8,092.00 in EUC benefits. However, during that period, Claimant was also entitled to receive EUC benefits in Ohio totaling $2,280.00 based on a May 2010 application for benefits.

Based on the foregoing, a UC Service Center issued determinations: (1) denying

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 801(c). Section 401(c) states:

   Compensation shall be payable to any employe who is or becomes unemployed, and who—

   *   *   *

   (c) has made a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a claim for compensation in the proper manner and on the form prescribed by the department. . . .

2. 43 P.S. § 874(a). Section 804(a) of the Law provides, in pertinent part:

   (a) Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue. . . .

3. 43 P.S. § 871(b). Section 801(b) states, in pertinent part:

   (b) Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act or under an employment security law of any other state or of the Federal Government . . . may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment. . . .

4. Pub.L. 110–252, 122 Stat. 2323, § 4001(b), 26 U.S.C. § 3304 Note. Section 4001(b) of the EUC Act, provides that a "State agency ... will make payments of [EUC benefits] to individuals who—(1) have exhausted all rights to regular compensation under the State law or under Federal law with respect to a benefit year. . . ."

5. Section 4005(b), (c), 26 U.S.C. § 3304 Note. Section 4005(b) and (c) of the EUC Act provides in pertinent part:

   (b) Repayment.—In the case of individuals who have received amounts of [EUC benefits] under this title to which they were not entitled, the State shall require such individuals to repay the amounts of such [EUC benefits] to the State agency, except that the State agency may waive such repayment if it determines that—

   (1) the payment of such [EUC benefits] was without fault on the part of any such individual; and

   (2) such repayment would be contrary to equity and good conscience.

   (c) Recovery by State Agency.—

   (1) In General.—The State agency may recover the amount to be repaid, or any part thereof, by deductions from any [EUC benefits] payable to such individual under this title or from any unemployment compensation payable to such individual. . . .

UC benefits for the claim weeks ending September 24, 2011, through October 29, 2011; (2) imposing a fault overpayment of $3,384.00 in UC benefits based on his failure to make a valid claim for benefits for those claim weeks; (3) imposing a penalty of eight weeks of benefits based on the overpayment of benefits; (4) denying EUC benefits for the claim weeks ending November 12, 2011, through March 24, 2012, based on his remaining eligibility for Ohio EUC benefits; and (5) imposing a nonfraud overpayment of the $8,092.00 in EUC benefits.

Claimant appealed the determinations, but neither Claimant nor Employer appeared at the Referee's hearing. Claimant's counsel appeared at the hearing, and Claimant's claim file was admitted into evidence without objection.

The Referee issued two decisions disposing of the appeals. With respect to Claimant's eligibility for UC benefits, the Referee found that Claimant earned amounts between $1,277.98 and $2,417.80 for the weeks ending September 24, 2011, through October 29, 2011; and that he reported $0.00 earnings and received $3,384.00 in UC benefits for the weeks at issue. In finding Claimant ineligible, the Referee explained:

> Section 401(c) of the Law provides that compensation shall be payable to a claimant if he had been employed and has made a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a claim for compensation in the proper manner and on the form prescribed by the department. Where a claimant has intentionally failed to report his earnings, it has been determined that the claimant did not file a valid claim for benefits for the weeks at issue. The claimant was not present to testify whether or not he intentionally

failed to report his earnings. However, the Referee takes judicial notice of the fact that, whether a claimant files his claims by telephone through the PAT system or over the Internet, the system asks the claimant whether he has worked for the weeks at issue. Only if the claimant states that he has not worked for those weeks will the system report $0.00 in earnings. Accordingly, the Referee finds that the claimant intentionally failed to report his earnings. The claimant did not file valid applications for benefits for the weeks at issue.

(Appeal No. 12–09–H–8782 at 2). Claimant appealed, and adopting and incorporating the Referee's findings and conclusions, the Board added:

> Additionally, the record does not contain sufficient competent testimony or evidence to contradict the Referee's determination that, by his own fault of intentionally failing to report his earnings for the weeks ending September 24, 2011, through October 29, 2011, the Claimant received a total of $3,384.00 in benefits to which he was not entitled. The Referee properly imposed a fault overpayment and eight week penalty. . . .

(Decision No. B–546682).

The Referee likewise affirmed the Service Center's denial of EUC benefits and the Board affirmed on appeal. The Board found as fact that Claimant received $8,092.00 in EUC benefits for the weeks ending December 24, 2011, through March 24, 2012; and that the Department ruled that Claimant was ineligible for the compensable weeks ending November 12, 2011, through March 24, 2012, because he had eligibility on a prior UC claim in Ohio. As the Board explained, in relevant part:

> Neither the Referee nor the Board has jurisdiction over unemployment compensation claims in Ohio. Moreover, as the

Referee noted, the record contains no information regarding the amount of benefits, if any, that the claimant may be owed from Ohio. The claimant is disqualified from receiving benefits under Section 4001(b) of the [EUC Act] because he did not exhaust his regular UC benefits.

(Decision No. B–546684). Claimant then filed the instant appeals of the Board's orders.[6]

Claimant first argues that the Board erred in affirming the fault overpayment of UC benefits because there is no evidence that he intentionally failed to report the wages that he was paid while receiving the UC benefits, and the Referee's use of judicial notice to supply the facts to support such a finding of fault violates his due process rights.[7]

■ Section 804(a) of the Law provides that if a person receives unemployment compensation benefits by reason of his fault, he will be responsible for repaying the amount received in error plus interest. "The word 'fault' within the meaning of Section 804(a) of the Law connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." *Amspacher v. Unemployment Compensa-*

*tion Board of Review,* 84 Pa.Cmwlth. 447, 479 A.2d 688, 691 (1984). Conduct that is designed to improperly and intentionally mislead the unemployment compensation authorities is sufficient to establish a fault overpayment. *Greenawalt v. Unemployment Compensation Board of Review,* 117 Pa.Cmwlth. 96, 543 A.2d 209, 211 (1988). For example, an intentional misstatement on an application for benefits can support a finding of fault under Section 804(a). *Matvey v. Unemployment Compensation Board of Review,* 109 Pa.Cmwlth. 591, 531 A.2d 840, 844 (1987). In order to find fault, the Referee or Board must make some findings with regard to a claimant's state of mind. *Greenawalt.*

■ Truthfully divulging all pertinent information regarding one's employment status is required so the unemployment compensation authorities may make an intelligent and well-informed decision as to a claimant's eligibility for benefits and proper computation of such benefits. *Amspacher,* 479 A.2d at 690. This requirement, which is imposed upon all claimants, "assists in fulfilling the Commonwealth's duty to protect the unemployment compensation fund against dissipation by those

---

**6.** By order dated April 2, 2013, this Court granted the Board's motion to consolidate the instant appeals.

**7.** As a corollary to this claim, Claimant also cites a companion Notice of Determination that was the subject of Appeal No. B–EUC–12–09–H–8787, in which the Board affirmed an additional $84.00 non-fraud overpayment in EUC benefits for the compensable weeks from November 12, 2011, through December 17, 2011, which he did not appeal, to support his assertion that the $3,384.00 fault overpayment is not "due and owing." The Board contends that $84.00 was for the overpayment in calculation of weekly benefits which he was paid and which was more than he was entitled to be paid. It does not disagree that the $3,384.00 is not "due and owing" because

an internal offset has already been taken. This is of no moment because what is before us is whether Claimant was overpaid to justify that offset. Moreover, that case is not part of this appeal and that notice is not in the certified record of this appeal, but they are only attached to Respondent's brief. *B.K. v. Department of Public Welfare,* 36 A.3d 649, 657 (Pa.Cmwlth.2012) ("An appellate court is limited to considering only those facts that have been duly certified in the record on appeal. For purposes of appellate review, that which is not part of the certified record does not exist. Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when they are not part of the certified record.") (citations omitted).

not entitled to benefits under the law." *Id.* at 691.

■ It is undisputed that the certified record in this case shows that none of the $10,940.55 in wages that Claimant earned during the weeks ending September 24, 2011, through October 29, 2011 appears in his claim record. Nevertheless, Claimant asserts that because he never appeared at the hearing, there is not substantial evidence regarding his state of mind to support the Board's finding of fault under Section 804(a). To the contrary, the claim record with zero reported income, coupled with the Referee's notice of how zero reported income would appear in Claimant's claim record, provides ample substantial evidence to support the finding that Claimant intentionally failed to report his earnings.

■ Moreover, it was not improper for the Referee to take judicial notice of the manner in which a claimant's income is reported in the claim process and such notice did not violate Claimant's due process rights. *See Gleeson v. State Board of Medicine,* 900 A.2d 430, 440 (Pa.Cmwlth. 2006), *appeal denied,* 591 Pa. 685, 917 A.2d 316 (2007) ("[P]ursuant to Section 35.173 of the General Rules of Administrative Policy and Procedure, 1 Pa.Code § 35.173, the agency head may take official notice of such matters as might be judicially noticed by the Courts of the Commonwealth. Here, the Board properly took judicial notice of its own records and, therefore, in so doing, did not violate Licensee's due process rights...."); *Seibert v. Unemployment Compensation Board of Review,* 44 Pa.Cmwlth. 506, 403 A.2d 1369, 1371 (1979) ("[A]ppellant argues ... that the referee impermissibly took judicial notice of Bureau procedures regarding the recordation of claimant visits without any testimony by any Bureau representative as to such procedure and that she was therefore denied

an impartial tribunal. We believe, however, that judicial notice is generally exercised when the fact is so well known that formal introduction of evidence in support of it is unnecessary. We also believe that Bureau employees do make notations on claimants' cards when the required reporting visits are made and that this is a fact of which judicial notice may be taken.") (citations omitted).

Finally, Claimant argues that the Board erred in affirming a non-fraud overpayment of Pennsylvania EUC benefits because it was based on an erroneous finding that he was entitled to receive additional Ohio UC benefits where the record shows that he was actually entitled to only receive additional Ohio EUC benefits.

However, as this Court has previously explained:

> In the present matter, there are two benefit years—2010 and 2012—at issue. The United States Department of Labor (USDOL) published specific guidelines to determine which EUC benefits are to be paid in cases involving multiple benefit years. UIPL No. 23–08, Changes 1 and 3 provide that a claimant who exhausts benefits from a regular Unemployment Compensation claim must be paid any remaining benefits from a previously established EUC claim before benefits will be paid on an EUC claim resulting from the exhaustion of the most recent regular UC claim. UIPL No. 23–08, Change 3 specifically provides, "[a]s agents of the United States, the states and cooperating state agencies may not deviate from this guidance without the prior approval of the Department." UIPL No. 23–08, Change 3 December 24, 2008 at 1.

*Sweeney v. Unemployment Compensation Board of Review,* 74 A.3d 1175, 1178 (Pa. Cmwlth.2013).

■ We agree with the Board that Claimant was required to exhaust the remaining $2,280.00 in Ohio EUC benefits due on his 2010 claim there before he could be eligible for any Pennsylvania EUC benefits due on his 2011 claim here. As a result, the Board did not err in determining that Claimant received a non-fraud overpayment in Pennsylvania EUC benefits because he was ineligible for such benefits for the compensable weeks ending November 12, 2011, through March 24, 2012, based on his continuing eligibility under the prior 2010 Ohio EUC claim.

Accordingly, the Board's orders are affirmed.

### ORDER

AND NOW, this *9th* day of *December*, 2013, the orders of the Unemployment Compensation Board of Review, dated January 24, 2013, at Nos. B–12–09–H–8788 and B–12–09–H–8782, are affirmed.