# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| James Saracino, | : |
| Petitioner | : |
| v. | : No. 1188 C.D. 2016 |
| | : Submitted: March 31, 2017 |
| Unemployment Compensation Board of Review, | : |
| Respondent | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY
SENIOR JUDGE COLINS**                                      **FILED:  May 24, 2017**

James Saracino (Claimant) petitions this Court for review of an order of the Unemployment Compensation Board of Review (Board) imposing a $7,694 fault overpayment under Section 804(a) of the Unemployment Compensation Law (the Law),[1] 43 P.S. § 874(a).  For the reasons set forth below, we reverse the Board's imposition of a fault overpayment with respect to benefits paid for the week ending October 18, 2014 through the week ending November 29, 2014 and remand this matter to the Board to revise Claimant's restitution obligation for those seven weeks to a non-fault overpayment.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

Claimant filed an application for unemployment compensation benefits on August 24, 2014, after he was discharged by FGI Insurance (Employer), and was determined to be eligible. (Record Item (R. Item) 9, Referee's Decision/Order Finding of Fact (F.F.) ¶1; R. Item 1, Claim Record.) Between August 2014 and February 7, 2015, Claimant received benefits. On April 23, 2015, the Department of Labor & Industry (Department) issued three Notices of Determination with respect to Claimant. The first determination ruled that Claimant was ineligible for benefits for the week ending October 18, 2014 through the week ending February 7, 2015, pursuant to Section 402(h) of the Law, which provides in relevant part that "[a]n employe shall be ineligible for compensation for any week … [i]n which he is engaged in self-employment." 43 P.S. § 802(h). (R. Item 3, Notice of Determination.) The second determination found that Claimant had been paid a total of $7,694 in benefits for those 17 weeks and imposed a fault overpayment of $7,694 pursuant to Section 804(a) of the Law. (*Id.*, Notice of Determination of Overpayment.) The third determination assessed 19 penalty weeks and a 15% penalty of $1,154.10 pursuant to Sections 801(b) and 801(c) of the Law for knowingly making false statements or knowingly failing to disclose information in order to obtain or increase benefits. (*Id.*, Notice of Determination of Penalty.)

Claimant appealed these determinations and, on May 22, 2015, the referee held a hearing at which Claimant and a Department audit and investigation specialist appeared and testified.[2] The Department witness testified and introduced evidence that Claimant and another individual formed S&L Insurance LLC on

---

[2] A second Department representative also participated in the hearing by telephone but had no personal knowledge of the facts or involvement in the investigation and decisions at issue.

September 22, 2014, opened a bank account for that entity on October 15, 2014, and signed a one-year lease dated October 9, 2014 for office space for the period November 1, 2014 through October 31, 2015. (R. Item 8, Referee Hearing Transcript (H.T.) at 6; R. Item 2, Service Center Exs. 4, 5, 8, 10.) The Department also showed that Claimant on November 25, 2014 entered into an agent agreement with Farmers Insurance effective December 1, 2014, that Claimant admitted in February 2015 that he was self-employed since December 2014, and that Claimant received payments from Farmers Insurance of $167.65 on December 1, 2014, $2,280.97 on January 2, 2015, and over $5,840 at the beginning of March 2015. (R. Item 8, H.T. at 6-7; R. Item 2, Service Center Exs. 6, 7, 8.) The Department witness testified that when Claimant filed for benefits for the weeks ending January 31, 2015 and February 7, 2015, he reported that he had a new employer and reported receiving wages. (R. Item 8, H.T. at 7.)

Claimant admitted that he signed the lease and took steps to start his company in October 2014, but testified that the company did not start operations until his agency agreement began in December 2014 and that no income was coming in to the company before December 2014. (R. Item 8, H.T. at 9-10.) Claimant testified that he did not realize that he was required to report activity to start up a business or that the mere fact that he had started a business made him ineligible for benefits. (*Id.* at 9, 11.) Claimant further testified that he talked to a CareerLink representative about possibly starting his own business because of the difficulty finding employment at his age and that the CareerLink representative did not tell him that this would make him ineligible for unemployment benefits. (*Id.* at 9.) Claimant did not dispute that he received a copy of the unemployment compensation handbook in August 2014, but testified that he did not review it. (*Id.*

at 11.) No evidence was introduced concerning the content of the unemployment compensation handbook and the Department did not introduce any evidence that Claimant knew that he was required to report activity taken to start a business. The Department, moreover, did not introduce any evidence that Claimant was asked whether he was self-employed or starting a business when he filed claims for continued benefits between September 2014 and February 7, 2015.

On May 29, 2015, the referee issued a decision affirming the Department's ineligibility determination, but reversing the fault overpayment and penalty determinations. The referee made the following findings of fact:

1. The claimant filed an application for unemployment compensation benefits effective August 24, 2014, following separation from employment with FGI Insurance.

2. The claimant and another individual formed a limited liability corporation to establish a business called S&L Insurance on September 22, 2014.

3. The claimant and his partner signed a rental agreement for a business location in Yardley, Pennsylvania on October 9, 2014, with an effective date of November 1, 2014.

4. The claimant and his partner made an opening deposit in a business bank account totaling $10,000 on October 15, 2015, to which the claimant contributed $2,000.

5. The claimant and his partner entered into a contract with Farmer's Group Insurance on November 25, 2014 with an effective date of December 1, 2014.

6. The claimant engaged in the business of selling insurance throughout the period at issue.

7. The claimant did not report his business activities to the Department.

4

8. The claimant did not review an Unemployment Compensation Handbook prior to starting the business.

9. The claimant claimed and received benefits for the weeks ending October 18, 2014 through February 7, 2015.

(R. Item 9, Referee's Decision/Order at 1.) The referee concluded that Claimant's activities in forming the business, signing a lease and opening a bank account were sufficient to constitute self-employment and that Claimant was therefore ineligible for benefits for the weeks ending October 18, 2014 through February 7, 2015 under Section 402(h) of the Law. The referee, however, also found Claimant's testimony credible and that Claimant did not know that starting a business made him ineligible for unemployment benefits or that he was required to report his business activity to the Department. (R. Item 9, Referee's Decision/Order at 2-3.) Based on this credibility determination, the referee ruled that the overpayment was a non-fault overpayment and that no penalties would be imposed. The Department appealed the referee's decision.

On June 15, 2016, the Board issued an order affirming the referee's decision that Claimant was ineligible for benefits for the weeks ending October 18, 2014 through February 7, 2015 and the denial of penalties, but holding that the overpayment was a fault overpayment. In its Order, the Board adopted and incorporated the referee's findings, including the referee's credibility determination, and made no findings that Claimant was aware or had reason to believe that starting a business disqualified him from benefits or that he was required to notify the Department that he was starting a business. (Record Item 12, Board Order at 1-2.) Indeed, the Board rejected the Department's argument that Claimant's receipt of the unemployment compensation handbook was sufficient to give him notice of his ineligibility on the ground that "the Department did not

5

establish what the handbook stated regarding start up businesses." (*Id.* at 1.) The Board, however, concluded that "because he failed to inform the Department that he started his own business," Claimant "was paid benefits to which he was not entitled by reason of his fault" and was therefore subject to a fault overpayment for the entire $7,694 in benefits received for the weeks ending October 18, 2014 through February 7, 2015. (*Id.*) Claimant filed the instant petition for review appealing the Board's order to this Court.[3]

In this appeal, Claimant argues that the Board's imposition of a fault overpayment is in error because Claimant's failure to report his business activity was a result of mistake and confusion, not blameworthy conduct. We agree that with respect to the period prior to December 2014, there was no basis on which a fault overpayment could properly be imposed.[4]

Section 804(a) of the Law provides that "[a]ny person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay … a sum equal to the amount so received by him and interest." 43 P.S. § 874(a). The Department's recovery of a fault overpayment contains punitive elements not applicable to other erroneous payments of unemployment compensation: the rate of interest imposed on fault

---

[3] Our review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether errors of law were committed and whether constitutional rights were violated. *Chishko v. Unemployment Compensation Board of Review*, 934 A.2d 172, 176 n.4 (Pa. Cmwlth. 2007).

[4] Claimant also argues that the fault overpayment cannot be sustained because the Department allegedly did not sufficiently show the nature of his relationship with Farmers Insurance to prove that he was self-employed. This argument is without merit. The record before the referee showed that Claimant admitted that his company, S&L Insurance LLC, and his work for Farmers Insurance were self-employment and that Claimant disputed only his knowledge of whether this affected his eligibility and what he was required to report. (R. Item 2, Service Center Ex. 6 at 1; R. Item 8, H.T. at 9-12.)

6

overpayments is 9% and the fault overpayment and interest may be collected by civil action or by placing a lien on the claimant's property. *Fugh v. Unemployment Compensation Board of Review*, 153 A.3d 1169, 1173 (Pa. Cmwlth. 2017) (*en banc*). In contrast, a non-fault overpayment may be recouped from the claimant only through deduction from future unemployment compensation benefits. 43 P.S. § 874(b).

The word "fault," under Section 804(a), requires an act to which blame, censure, impropriety, shortcoming, or culpability attaches. *Fugh*, 153 A.3d at 1175-76; *Castello v. Unemployment Compensation Board of Review*, 86 A.3d 294, 298 (Pa. Cmwlth. 2013); *Chishko v. Unemployment Compensation Board of Review*, 934 A.2d 172, 177 (Pa. Cmwlth. 2007); *Greenawalt v. Unemployment Compensation Board of Review*, 543 A.2d 209, 211 (Pa. Cmwlth. 1988). "A blameworthy act requires a showing of the actor's state of mind, or *mens rea*." *Fugh*, 153 A.3d at 1176. The mere fact that the claimant did not provide correct information to the Department is not sufficient by itself to permit imposition of a fault overpayment. *Fugh*, 153 A.3d at 1176-77; *Greenawalt*, 543 A.2d at 211. Where the error or failure to provide information is shown only to be the result of ordinary negligence, mistake or confusion by the claimant, the claimant cannot be held liable for a fault overpayment under Section 804(a). *Fugh*, 153 A.3d at 1176-77; *Cruz v. Unemployment Compensation Board of Review*, 531 A.2d 1178, 1180 (Pa. Cmwlth. 1987). Knowing recklessness or gross negligence by the claimant in failing to provide correct information, in contrast, is sufficient to support a fault overpayment. *Fugh*, 153 A.3d at 1176.

Here, the Board's findings and the evidence in the record do not permit a conclusion that Claimant's failure to report his activities from September

7

2014 through November 2014 of setting up his company and preparing to go into business was anything other than a mistake or confusion as to his eligibility and reporting obligations. Prior to December 2014, Claimant was not working or earning income. (R. Item 8, H.T. at 9.) Claimant testified that he was unaware that merely starting a business made him ineligible for benefits and that when he discussed going into business for himself with a CareerLink representative, the representative did not tell him that starting a business affected his eligibility. (*Id.* at 9-11.) The Board found Claimant's testimony credible and there was no evidence that Claimant was given any instruction by the Department to report business start-up activity. Although Claimant received a copy of the unemployment compensation handbook, no evidence was introduced as to the contents of that handbook. Moreover, the Claim Record shows that the questions Claimant answered when he filed for continued benefits asked whether he worked, but did not ask about self-employment or business ventures. (R. Item 1, Claim Record at 7.) We therefore conclude that the Department did not show a fault overpayment of benefits for the weeks ending October 18, 2014 through November 29, 2014.

The evidence is substantially different for the period after December 1, 2014. Claimant entered into an agency agreement with Farmers Insurance effective December 1, 2014 and began at that time selling insurance under that agreement for which he would be paid commissions. (R. Item 8, H.T. at 6-7; R. Item 2, Service Center Exs. 6, 7, 9; R. Item 9, F.F. ¶¶5-6.) The questions that Claimant answered when he filed for continued benefits asked whether he was working and, while Claimant did not understand the legal standards for and effect of self-employment, he knew he was working. Claimant, however, did not report

8

this work or inquire with the Department as to whether he should provide information concerning this work. (R. Item 9, F.F. ¶7.) "Truthfully divulging all pertinent information regarding one's employment status is required so the unemployment compensation authorities may make an intelligent and well-informed decision as to a claimant's eligibility for benefits and proper computation of such benefits." *Castello*, 86 A.3d at 298. The Board's conclusion that the overpayment was by reason of Claimant's fault is therefore supported by the record with respect to the payments for weeks ending December 6, 2014 through February 7, 2015.

For the foregoing reasons, we reverse the Board's order insofar as it imposed a fault overpayment with respect to benefits paid to Claimant for the week ending October 18, 2014 through the week ending November 29, 2014 and remand this matter to the Board to revise Claimant's restitution obligation for those seven weeks to a non-fault overpayment and reduce the fault overpayment to $4,453.

_____
JAMES GARDNER COLINS, Senior Judge

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

James Saracino,                     :
:
         Petitioner           :
:
         v.                     : No. 1188 C.D. 2016
:
Unemployment Compensation     :
Board of Review,                :
:
         Respondent       :

# **O R D E R**

AND NOW, this 24th day of May, 2017, the order of the Unemployment Compensation Board of Review (Board) in the above-captioned matter is REVERSED insofar as it imposed a fault overpayment with respect to benefits paid to Petitioner for the week ending October 18, 2014 through the week ending November 29, 2014. This matter is REMANDED to the Board for revision of Petitioner's restitution obligation for those seven weeks to a non-fault overpayment and for reduction of the fault overpayment to $4,453.

Jurisdiction relinquished.

_____
JAMES GARDNER COLINS, Senior Judge